# IN THE SUPREME COURT OF IOWA

No. 10–0652

Filed September 2, 2011

**IN THE MATTER OF
JUSTIN ALEXANDER MARSHALL**

**JUSTIN ALEXANDER MARSHALL,**

Appellee,

vs.

**STATE OF IOWA,**

Appellant.

Appeal from the Iowa District Court for Johnson County, Ian K. Thornhill, Judge.

State appeals district court order releasing material witness from detention pursuant to Iowa Code section 804.11 (2009). **AFFIRMED.**

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, Janet M. Lyness, County Attorney, and Meredith Rich-Chappell, Assistant County Attorney, for appellant.

Rachel C.B. Antonuccio of Cole & Vondra, LLP, Iowa City, for appellee.

**APPEL, Justice.**

In this case, we consider the scope of the State's authority under Iowa Code chapter 804 to detain a person whom the State asserts is a material witness to a crime. The district court concluded that the authority of the State to detain a material witness is extinguished when a trial date is set for the underlying crime and the material witness is served with a subpoena. The State sought an interlocutory appeal from the district court's order, which we granted. We now affirm the order of the district court for the reasons expressed below.

## I. Factual and Procedural Background.

In October 2009, Iowa City police responded to a 911 call and found the body of John Versypt in a hallway of an apartment building in Iowa City. Versypt was the victim of a gunshot wound to the head.

As part of their investigation, police spoke with Justin Marshall, who resided at the apartment building where Versypt's body was found. Marshall provided police with incorrect statements about his whereabouts at the time of the murder and provided inconsistent statements to police about his knowledge of the murder and surrounding events. Marshall agreed to take two polygraph tests and on both occasions provided answers that police regarded as deceptive.

At the time of the murder, Marshall was staying with his aunt in her apartment in the building. His aunt and one of her daughters, however, moved from Iowa City to Chicago after the shooting. Although Marshall's father resided in Iowa City in the past, an arrest warrant, which had been issued in 2008, was outstanding and his whereabouts were unknown. Police were aware of no other relatives of Marshall's in the Iowa City area. As the investigation continued, police received information from tenants in the apartment building that Marshall's aunt

had purchased a bus ticket for Marshall to Texas, where criminal charges were pending against him.

In light of the crime, the belief that Marshall had information relating to it, Marshall's lack of current family connections to Iowa City, and his apparent plan to leave the area, the State filed a material witness complaint against Marshall and sought an arrest warrant for him. A magistrate approved the warrant, and the warrant was executed on November 18, 2009. At the time of Marshall's arrest, no one had been charged with the murder of Versypt. The magistrate entered an order requiring $100,000 in sureties, which Marshall did not produce. On February 11, 2010, the State charged Charles Thompson with murder in connection with Versypt's death.

On February 8, 2010, three days before the State charged Thompson, Marshall's attorney filed a motion to dismiss the material witness complaint alleging that Marshall's continued detention violated the Due Process, Equal Protection, and Cruel and Unusual Punishment Clauses of the Iowa and United States Constitutions. The district court, however, requested additional briefing on the question of the proper interpretation of Iowa Code section 804.11, which provides for the arrest of a material witness when the witness might be unavailable for "service of a subpoena." Iowa Code § 804.11 (2009).

The district court held that the State lacked statutory authority to continue Marshall's detention and ordered his release. The district court concluded that the original detention was lawful as there was probable cause to believe that Marshall possessed information related to the murder and that, at the time of his arrest, a subpoena could not be served on him as Thompson had not been arrested and a trial date for the underlying crime had not been set. According to the district court,

however, the posture changed after Thompson was charged with the murder of Versypt and a trial date set. At this point, the district court reasoned, probable cause to believe that Marshall would be unavailable for the service of a subpoena "disappeared." As a result, the district court concluded that there was no further basis for detaining Marshall.

The State filed an application for interlocutory review of the district court's order. We granted interlocutory review and now affirm.

## II. Standard of Review.

The district court's dismissal of the material witness complaint was based on an interpretation of Iowa Code sections 804.11, 804.23, and 811.2. Our review of questions of statutory interpretation is for errors at law. *State v. Fischer*, 785 N.W.2d 697, 699 (Iowa 2010).

## III. Issues Presented on Appeal.

The nub of Marshall's claim is that the State lacked statutory authority under the facts and circumstances of this case to hold him as a material witness after a trial date had been set for the underlying criminal trial and a subpoena could be served on him. The question involves the proper interpretation of Iowa Code sections 804.11, 804.23, and 811.2.

Iowa Code section 804.11 provides:

> When a law enforcement officer has probable cause to believe that a person is a necessary and material witness to a felony and that such person might be unavailable for service of a subpoena, the officer may arrest such person as a material witness with or without an arrest warrant.

Iowa Code § 804.11.

Iowa Code section 804.23 provides:

> The officer shall, without unnecessary delay, take the person arrested pursuant to section 804.11 before the nearest or most accessible magistrate to the place where the arrest occurred.

. . . . The magistrate may order the person released pursuant to section 811.2.

*Id.* § 804.23.

Iowa Code chapter 811 establishes the framework for pretrial and posttrial release through bail for defendants. Iowa Code section 811.2 contains several provisions designed to allow the magistrate to "assure the appearance . . . as required," "assure the appearance of the person for trial or deferral of judgment," "assure appearance as required," and "assure the defendant's appearance." *See* Iowa Code § 811.2(1), .2(1)(*e*), .2(2).

Marshall asserts that the narrow language in Iowa Code section 804.11 authorizing the arrest of a necessary and material witness to a felony when such person might be "unavailable for service of a subpoena" means that once a subpoena can be served on the witness, he must be released as the purpose of the arrest no longer exists.

The State counters that Marshall's focus on the language in Iowa Code section 804.11 is too narrow. The State argues that because Iowa Code section 804.23 incorporates the bail provisions of Iowa Code section 811.2, a material witness may be detained to secure "the appearance of the person for trial" even though Iowa Code section 804.11 authorizes arrest only to ensure service of a subpoena.

**IV. Overview of Witness Detention Prior to Trial.**

**A. The Concept of Witness Detention.** In *Stein v. New York*, 346 U.S. 156, 184, 73 S. Ct. 1077, 1092, 97 L. Ed. 1522, 1542 (1953), *overruled on other grounds by Jackson v. Denno*, 378 U.S. 368, 391, 84 S. Ct. 1744, 1788, 12 L. Ed. 2d 908, 924 (1964), Justice Robert Jackson observed in an often-cited passage that "[t]he duty to disclose knowledge of crime . . . is so vital that one known to be innocent may be detained,

in the absence of bail, as a material witness." No one can seriously doubt that obtaining the testimony of witnesses in a criminal trial is important to society. A civilized society justly demands that citizens who have knowledge of crime provide testimony to ensure that the criminal laws are effectively enforced. *See State v. Hernandez-Lopez*, 639 N.W.2d 226, 236 (Iowa 2002).

Yet, at the same time, the notion of incarcerating an innocent individual who happens to be a witness to a crime is troublesome. How can it be, for instance, that a wealthy person accused of a serious crime may be free on bail pending trial while an innocent but indigent witness of the crime who is unable to post required sureties is detained prior to trial? Is it fair for the state to infringe on a witness's liberty interest through incarceration when the state lacks probable cause to arrest the witness for a crime? Why do we allow a criminal defendant to demand a speedy trial, but afford no analogous right to a jailed witness? Constitutional implications of due process, equal protection, and search and seizure lurk in the shadows of these nettlesome questions.[1]

**B. Historical Concerns Regarding Witness Detention.** Concerns about the potential abuse of witness detention have historically triggered periodic calls for reform.[2] For example, in New York, police

---

[1]*See, e.g.*, Ricardo J. Bascuas, *The Unconstitutionality of "Hold Until Cleared": Reexamining Material Witness Detentions in the Wake of the September 11th Dragnet*, 58 Vand. L. Rev. 677, 701 (2005) [hereinafter Bascuas] (asserting that "the Fourth Amendment was specifically intended to prevent arrests of suspicious characters for investigatory purposes"); David Cole, *Out of the Shadows: Preventive Detention, Suspected Terrorists, and War*, 97 Cal. L. Rev. 693, 707–13 (2009) (discussing potential due process and Fourth Amendment issues created by preventive detention); Joseph G. Cook, *The Detention of Material Witnesses and the Fourth Amendment*, 76 Miss. L.J. 585, 603–21 (2006) (outlining argument that use of detention of witness to investigate crimes violates Fourth Amendment).

[2]Historical examples of the abuse of material witness detention can be found in Carolyn B. Ramsey, *In the Sweat Box: A Historical Perspective on the Detention of Material Witnesses*, 6 Ohio St. J. Crim. L. 681, 686–89, 694 (2009) (citing an Illinois

officials in the 1870s called for the repeal of material witness detention because the public was so intimidated by its potential use that public cooperation with law enforcement had been seriously undermined. *See* Wesley MacNeil Oliver, *The Rise and Fall of Material Witness Detention in Nineteenth Century New York*, 1 N.Y.U. J. L. & Liberty 727, 728 (2005).

Concerns regarding witness detention were so great early in the twentieth century that, in 1912, the committee on Jurisprudence and Law Reform of the American Bar Association recommended that under no circumstances should a witness have to undergo detention for his inability to post bond. Comment, Cessante Ratione Legis Cessat Ipsa Lex *(The Plight of the Detained Material Witness)*, 7 Cath. U. L. Rev. 37, 40 (1958) [hereinafter Cessante Ratione Legis Cessat Ipsa Lex].

Although this sweeping bright-line recommendation was ultimately rejected, the American Bar Association approved a resolution that detention of material witnesses should occur only under extraordinary circumstances and that, when detention was necessary, due regard should be afforded the witness with respect to personal comfort and just compensation. *Id.* In 1930, the American Law Institute addressed the issue of witness detention in its Model Code of Criminal Procedure. Among other things, the Model Code provided that if a magistrate determined that a witness was unable to post the required bond, a three-day window for deposition of the witness was opened, after which the witness was discharged. Model Code of Criminal Procedure § 58 (1931).

_____

case in which a material witness was interrogated for hours at a time for a week and a California case of three Chinese men held for two years in the San Diego County Jail as witnesses), and Wesley MacNeil Oliver, *The Rise and Fall of Material Witness Detention in Nineteenth Century New York*, 1 N.Y.U. J. L. & Liberty 727, 729 (2005) (citing an instance in which a woman who reported that she had been raped was held as a material witness while her alleged rapist went free on bond, a case in which a woman who reported a theft was held for nine months while the thief went undiscovered, and a case in which a man who witnessed his wife's murder was held for months while the crime remained unsolved).

As the twentieth century advanced, the states and the federal government sought to accommodate the needs of law enforcement without unduly infringing the liberty interests of witnesses. There were two noteworthy statutory developments designed to strengthen the ability of law enforcement to obtain needed testimony in criminal trials without pretrial detention.

On the federal level, Congress enacted the Federal Fugitive Felon Act in 1948. *See* 18 U.S.C. § 1073 (2006). This statute prohibits interstate flight to avoid testifying in any criminal proceeding. *Id.* A violation of the Federal Fugitive Felon Act results in a fine and/or a period of incarceration of up to five years. *Id.* The Act significantly increased the potential sanctions for a witness who fled a jurisdiction in order to avoid giving testimony at a criminal trial.

In addition, all states enacted versions of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. *See, e.g.*, Iowa Code §§ 819.1–.5. This Act allows courts in a foreign state to issue summons directing witnesses to testify in the host state and to punish the witness for contempt for failure to comply. Unif. Act to Secure the Attendance of Witnesses from Without A State in Criminal Proceedings § 3 (1936), 11 U.L.A. 27 (2003). Thus, a witness could no longer avoid the sanction of contempt for failure to testify by simply leaving a jurisdiction. *See id.*

The traditional debate over the proper use of material witness detention continued unabated in the second half of the twentieth century and into the new millennium. In the 1950s and 1960s, a fistful of student commentaries criticizing witness detention practices appeared in

law reviews,[3] leading up to a seminal article in the Iowa Law Review in 1969 by a highly regarded University of Iowa scholar, Ronald L. Carlson. In his article, Professor Carlson noted that many of the material witness statutes, including Iowa's, date back to an earlier time in American history when a witness traveling to another state effectively cut off contact with the state of trial. *See* Ronald L. Carlson, *Jailing the Innocent: The Plight of the Material Witness*, 55 Iowa L. Rev. 1, 16–17 & n.61 (1969) [hereinafter Carlson]. Though witness confinement may have been necessary in the nineteenth century, Professor Carlson observed, the advent of modern police methods of transportation and communication and the passage of the Uniform Act to Secure the Attendance of Witnesses lessened the obstacles facing law enforcement to procure the testimony of recalcitrant witnesses. *See id.* Professor Carlson also criticized the approach of many states that allowed a material witness to be jailed based not on a breach of the witness's legal duty to testify, but on suspicion that the witness may breach his legal duty in the future. *Id.* at 17. Further, in recent years, the detention of persons believed to be associated with terrorism has generated a

---

[3]Cessante Ratione Legis Cessat Ipsa Lex, 7 Cath. U. L. Rev. at 50 (stating enactment of Uniform Act to Secure the Attendance of Witnesses should replace outmoded procedure of confinement); Comment, *Confining Material Witnesses in Criminal Cases*, 20 Wash. & Lee L. Rev. 164, 167–68 (1963) (acknowledging the state's interest in compelling the attendance of material witnesses, but noting the importance of safeguards to protect the liberty interests of material witnesses); Comment, *Pretrial Detention of Witnesses*, 117 U. Pa. L. Rev. 700, 700–01 (1969) (stating the fairer procedures for material witnesses severely limits jailing of witnesses and imposes penalties only for actual disobedience); Comment, *Witnesses—Imprisonment of the Material Witness for Failure to Give Bond*, 40 Neb. L. Rev. 503, 514 (1961) (noting enactment of reciprocal witness statutes and enhanced sanctions for failing to testify as required would "be a more satisfactory answer than . . . jailing the witness beforehand").

vigorous discussion regarding the proper scope and use of material witness detention.[4]

Currently, the federal government and all the states have statutes that, at least under certain circumstances, allow the detention of witnesses to crimes in order to ensure that witnesses are available to testify at trial. The focus of attention seems to be not whether to grant law enforcement the power to detain material witnesses in some circumstances, but how to keep such state authority within proper bounds.

**C. English Common Law.** Common law in the fifteenth century did not recognize the right to compel a witness to testify in criminal proceedings. Over time, however, the common law evolved to the point where witnesses had a duty to testify and could be compelled to do so. *See generally* Stacey M. Studnicki, *Material Witness Detention: Justice*

---

[4]*See, e.g.*, Bascuas, 58 Vand. L. Rev. at 678–80 (discussing detention for investigative purposes of Portland lawyer Brandon Mayfield, who was held in solitary confinement with regular strip searches for two weeks, based on an erroneous fingerprint report allegedly connecting him with terrorist bombing in Spain); Ronald L. Carlson, *Distorting Due Process for Noble Purposes: The Emasculation of America's Material Witness Laws*, 42 Ga. L. Rev. 941, 967–72 (2008) (noting human dimension of witness detention and calling for limitations on such detention); Donald Q. Cochran, *Material Witness Detention in a Post-9/11 World: Mission Creep or Fresh Start?*, 18 Geo. Mason L. Rev. 1, 40 (2010) (suggesting detention of witnesses for investigative purposes may be consistent with the Fourth Amendment); Joseph G. Cook, *The Detention of Material Witnesses and the Fourth Amendment*, 76 Miss. L.J. 585, 589–98 (2006) (discussing at length *United States v. Awadallah*, 349 F.3d 42 (2d Cir. 2003)); Timothy John Casey, Comment, United States v. Awadallah*: Uncle Sam Wants You to Spend Eighty-Three Days Behind Bars? An Analysis of the Case and Its Implications for Fourth Amendment Jurisprudence*, 78 St. John's L. Rev. 185, 202 (2004) (declaring judiciary faces "unenviable challenge of carefully reserving detention and punishment for constitutionally permissible instances" when detection and prevention of crime has become more complex); *see also Ashcroft v. al-Kidd*, ___ U.S. ___, ___, 131 S. Ct. 2074, 2083–84, 179 L. Ed. 2d 1149, 1158–60 (2011) (rejecting *Bivens*-type action against Attorney General where plaintiff admitted validity of underlying material witness warrant but asserted valid warrant was obtained with the improper motive of detaining a person without any intention to use testimony of detainee as a witness against a third party); *United States v. Awadallah*, 349 F.3d at 62–64 (upholding detention for purposes of obtaining testimony before grand jury under federal statute).

*Served or Denied?*, 40 Wayne L. Rev. 1533, 1534–36 (1994). Some dispute exists as to whether the common law permitted the detention of a witness prior to a breach of the obligation to testify. One prominent scholar has concluded that, while a witness could be placed under legal compulsion to appear at trial, there was no common law authority to detain a witness prior to trial to secure testimony. Joseph G. Cook, *The Detention of Material Witnesses and the Fourth Amendment*, 76 Miss. L.J. 585, 609 (2006). This view finds support in a number of state cases holding that there is no common law power to detain material witnesses prior to any unlawful conduct. *See, e.g.*, *Comfort v. Kittle*, 81 Iowa 179, 182, 46 N.W. 988, 989 (1890); *Bickley v. Commonwealth*, 25 Ky. (2 J.J. Marsh.) 572, 573–74 (1829); *Bates v. Kitchel*, 125 N.W. 684, 685 (Mich. 1910); *Little v. Territory*, 114 P. 699, 699–700 (Okla. 1911). *But see State ex rel. Gebhardt v. Buchanan*, 175 So. 2d 803, 805–06 (Fla. Dist. Ct. App. 1965); *Lowe v. Taylor*, 180 S.E. 223, 226 (Ga. 1935).

### D. Federal Material Witness Statutes and Case Law.

1. *Federal statutory background.* Material witness statutes in the United States have a long history. The First Judiciary Act of 1789 addressed the question. Specifically, in a criminal case, the First Judiciary Act stated that copies of process against an accused should be speedily returned to the clerk's office, "together with the recognizances of the witnesses for their appearance to testify in the case; which recognizances the magistrate before whom the examination shall be, may require on pain of imprisonment." First Judiciary Act of 1789, ch. 20, § 33, 1 Stat. 73, 91 (1789). The focus of this original federal witness detention provision was explicitly to ensure the appearance of the witness to testify in the case. *See id.* Further, there was no provision for detention of witnesses for failure to provide bail or sureties, but only for

failure to enter into a recognizance before a magistrate to appear at the trial to provide testimony.[5] *Id.* At least one scholar has suggested that "pain of imprisonment" occurred only when the recognizance, or promise to appear, was violated. *See* Ricardo J. Bascuas, *The Unconstitutionality of "Hold Until Cleared": Reexamining Material Witness Detentions in the Wake of the September 11th Dragnet,* 58 Vand. L. Rev. 677, 707–08 (2005).

The question of whether the federal government has authority to detain material witnesses was eventually resolved through congressional action. When Congress passed the Bail Reform Act of 1966, it did not expressly authorize the arrest and detention of a witness, but did authorize a judicial officer to impose conditions of release when it was deemed impracticable to secure the presence of the witness by subpoena. Pub. L. No. 89-465, § 3(a), 80 Stat. 216 (codified at 18 U.S.C. § 3149 (1970)). This apparent anomaly was cured by Congress with the passage of the current federal witness statute in the Bail Reform Act of 1984, which provides:

> If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person . . . . No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice.

18 U.S.C. § 3144 (2006). While the legislation established a general power to detain material witnesses when it would be impracticable to secure presence in a criminal proceeding through a subpoena, it also

---

[5]The concept of recognizance is distinct from the posting of sureties or bail. Recognizance is only a promise to appear, made orally or in writing, at the time of trial. *See Comfort,* 81 Iowa at 182, 46 N.W. at 989–90.

supplied a significant safety valve, namely, the prospect of release after giving testimony by deposition. *Id.*

2. *Federal case law on relationship between arrest and detention and service or compliance with subpoenas.* A key issue in this case is the relationship between the subpoena power and the authority of the state to detain a witness prior to trial. There is a body of federal case law related to the relationship between the arrest and detention of a material witness and the service of and/or responsiveness of a witness to a subpoena.

In *Barry v. United States ex rel. Cunningham*, 279 U.S. 597, 613, 49 S. Ct. 452, 455, 73 L. Ed. 867, 871 (1929), the Supreme Court considered whether the petitioner, who declined to testify before a Senate committee, could be arrested to compel his attendance without service of a subpoena. The Court stated that the practice of issuing an arrest warrant only after a witness disobeys a subpoena is "generally to be followed." *Barry*, 279 U.S. at 616, 49 S. Ct. at 456, 73 L. Ed. at 873. Yet, the Court further stated that "a court has power in the exercise of sound discretion to issue a warrant of arrest without a previous subpoena, when there is good reason to believe that otherwise the witness will not be forthcoming." *Id.*

The relationship between witness detention and subpoena issues was again explored forty years after *Barry* by the Ninth Circuit in *Bacon v. United States*, 449 F.2d 933 (9th Cir. 1971). In *Bacon*, the Ninth Circuit held that the Government failed to show sufficient likelihood that it was impracticable to obtain the witness's presence through a subpoena where the Government asserted that the witness had access to large amounts of cash, had personal contact with fugitives, and was captured on a rooftop in Washington, D.C. *Bacon*, 449 F.2d at 944. The court

emphasized that there was no showing of past attempts by Bacon to evade judicial process or of past clandestine travels by Bacon. *Id.* As a result, the district court order was reversed, with directions to quash the warrant of arrest and order fixing bail. *Id.* at 945.

Several years after *Bacon*, the relationship between the arrest and detention of a material witness and subpoena issues was revisited by a federal district court in *United States v. Feingold*, 416 F. Supp. 627 (E.D.N.Y. 1976). In *Feingold*, the witness had not actually disobeyed a subpoena, but there were seven unsuccessful attempts to serve him and his attorney with a subpoena. *Feingold*, 416 F. Supp. at 629. The court concluded that the unwillingness of the witness to cooperate was sufficient to establish a basis for his detention for the purpose of obtaining trial testimony. *Id.*

These federal cases, of course, are not authority for the construction of Iowa's differently framed witness detention statute. What these cases show, however, is that the question of the proper relationship between detention of a witness and the adequacy of subpoena power was a question being ventilated in the federal courts when Iowa's current material witness provisions were adopted by the general assembly.

**E. State Material Witness Statutes and Case Law.**

1. *Introduction.* State statutes relating to detention of material witnesses have also been around for a long time. Early material witness statutes were generally brief and to the point. Originally, many of them did not call for detention upon failure to provide security; but, in most states, there have been subsequent amendments somewhat broadening the scope of material witness detention authority.

2. *Review of state material witness statutes.* As with our review of federal law, a survey of the material witness provisions of other state

statutes provides context to illuminate the Iowa legislature's choice of language in Iowa Code section 804.11.

Following the federal approach, many state material witness statutes authorize detention of a material witness when the state makes a sufficient demonstration that it is impracticable to secure the presence of the person by subpoena.[6] Other states, though they do not specifically mention the ineffectiveness of subpoenas, nonetheless emphasize that the purpose of material witness provisions is to ensure that witnesses "appear and testify" in criminal proceedings.[7] Both of

---

[6]*See* Kan. Stat. Ann. § 22-2805 (West, Westlaw through 2010 Reg. Sess.) ("impracticable to secure the witness' presence by subpoena"); Ky. R. Crim. P. 7.06 (West, Westlaw through July 1, 2011) ("impracticable to secure that person's attendance by subpoena"); La. Rev. Stat. Ann. § 15:257 (Westlaw through 2011 1st Ex. Sess.) ("impracticable to secure the presence of the person by subpoena"); Me. R. Crim. P. 46(h) (West, Westlaw through July 15, 2010) ("impracticable to secure that person's presence by subpoena"); Nev. Rev. Stat. Ann. § 178.494 (West, Westlaw through 2009 75th Reg. Sess. & 2010 26th Special Sess.) ("impracticable to secure the person's presence by subpoena"); N.J. Stat. Ann. § 2C:104-1(b) (West, Westlaw through L.2011, c. 93, 95 & J.R. No. 6) ("to secure the appearance of a person who is unlikely to respond to a subpoena"); N.M. Stat. Ann. § 31-3-7 (West, Westlaw through 2011 1st Reg. Sess.) ("impracticable to secure his presence by subpoena"); N.Y. Crim. Proc. Law § 620.20(1)(b) (McKinney, Westlaw through L.2011, ch. 1–54, 58, 63–96, 98–108) ("reasonable cause to believe that" the material witness "[w]ill not be amenable or responsive to a subpoena at a time when his attendance will be sought"); N.C. Gen. Stat. Ann. § 15A-803 (West, Westlaw through 2010) ("may not be amenable or responsive to a subpoena at a time when his attendance will be sought"); R.I. Super. R. Crim. P. 46(b) (West, Westlaw through June 1, 2010) ("impracticable to secure the person's presence by subpoena"); Va. Code Ann. § 19.2-127 (West, Westlaw through 2011 Reg. Sess.) (detention authorized if "it reasonably appears that it will be impossible to secure [the material witness's] presence by a subpoena"); Wis. Stat. Ann. § 969.01(3) (West, Westlaw through 2011 Act 31) ("impracticable to secure the person's presence by subpoena").

[7]*See* Ala. Code § 15-11-12(c) (Westlaw through 2011 Reg. Sess., Act 2011-255) ("appear to testify"); Alaska Stat. Ann. §12.30.050(a) (West, Westlaw through 2010 2d Reg. Sess.) (securing "testimony of a person . . . in a criminal proceeding"); Cal. Penal Code § 878 (West, Westlaw through 2011 Reg. Sess., ch. 136 & 2011-2012 Ex. Sess., ch. 8) ("appear and testify"); Idaho Code Ann. § 19-820 (West, Westlaw through 2011 Reg. Sess., ch. 138 & 2011-2012 1st Ex. Sess., ch. 8) ("appear and testify"); Mich. Comp. Laws Ann. § 767.35 (West, Westlaw through 2011 Reg. Sess., P.A. 2011, No. 127) ("danger of the loss of testimony of the witness"); Miss. Code Ann. § 99-15-7 (West, Westlaw through 2010 Reg. Sess. & 1st and 2d Ex. Sess.) (securing "appearance to prosecute or give evidence touching the offense"); Mo. Ann. Stat. § 544.420 (West,

these state material witness models—those that expressly mention "impracticability" of subpoenas and those that focus on the need to "appear and testify"—contemplate that the mere service of a subpoena does not prevent the detention of a material witness if the state makes a sufficient showing that a subpoena will not ensure appearance of the witness at a criminal proceeding.

A number of states seek to limit the duration of detention of material witnesses. Like the federal statute,[8] about fifteen state constitutions and/or statutes provide that a witness may not be detained longer than is necessary to secure testimony by deposition under certain circumstances.[9] A few other states—notably Massachusetts and

_____

Westlaw through July 14, 2011) (securing witness "to appear and testify"); Neb. Rev. Stat. Ann. § 29-507 (West, Westlaw through 2010 2d Reg. Sess.) (detention when release "will not reasonably assure that the witness will appear and testify at the trial as required"); N.D. Cent. Code Ann. § 31-03-19 (West, Westlaw through 2009 Reg. Sess.) ("reason to believe that such witness will not appear and testify"); Ohio Rev. Code Ann. § 2937.16 (West, Westlaw through 2011 129th G.A., Files 1–27, 30–34, 38, 41) ("to appear and testify before the proper court at a proper time"); Okla. Stat. Ann. tit. 22, § 274 (West, Westlaw through 2011 1st Reg. Sess.) ("to appear on the said trial and give his testimony therein"); Or. Rev. Stat. Ann. § 136.608(2)(b) (West, Westlaw through 2011 Reg. Sess.) ("Will not appear at the time when attendance of the witness is required."); Pa. R. Crim. P. 522(A) (West, Westlaw through June 15, 2011) ("will fail to appear when required"); Tex. Code Crim. Proc. Ann. art. 17.34 (West, Westlaw through 2011 Reg. Sess., ch. 41) (ensuring "appearance to testify before the proper court"); Vt. Stat. Ann. tit. 13, § 6605 (West, Westlaw through 2011-2012 Sess., No. 28) (detention "where his or her attendance in such investigation or prosecution is necessary"); Wash. Rev. Code Ann. § 10.52.040 (West, Westlaw through Aug. 1, 2011) (authorizing detention where "the witness would not attend the trial of the matter unless detained").

[8] 18 U.S.C. § 3144.

[9] *See* Colo. Const. art. 2, § 17 (West, Westlaw through Nov. 2, 2010) (no person shall be detained longer for purpose of securing testimony than may be necessary to take deposition); Mont. Const. art. 2, § 23 (West, Westlaw through 2010 gen. election) (no witness "shall be imprisoned . . . longer than may be necessary in order to take his deposition"); Wyo. Const. art. 1, § 12 (West, Westlaw through Nov. 4, 2008) ("No person shall be detained as a witness . . . longer than may be necessary to take his deposition . . . ."); Alaska Stat. Ann. §12.30.050; Ariz. Rev. Stat. Ann. § 13-4083(B) (West, Westlaw through 2011 1st Reg. Sess. & 3d Special Sess.); Ark. Code Ann. § 16-85-508(c) (West, Westlaw through 2011 Reg. Sess.) (requiring release if testimony can be adequately secured by deposition and further detention is not necessary to prevent failure of justice); Cal. Penal Code § 882; Fla. Stat. Ann. § 902.17(3) (West, Westlaw through Oct.

Minnesota—require release of the witness, with certain exceptions, if the witness demonstrates an inability to procure the sureties ordered by the court.[10] These state statutes are designed to address the potential open-ended detention of a material witness who is not charged with a crime and to address the unfairness of continued detention of witnesses who lack the means to provide required sureties.

The material witness statute in Illinois is the most like Iowa's. The statute provides that the judge may require a witness "to enter into a written undertaking to appear at the trial." 725 Ill. Comp. Stat. Ann. 5/109-3(d) (West, Westlaw through 2011 Reg. Sess. P.A. 97-145 with exceptions). The judge may also "provide for the forfeiture of a sum certain in the event the witness does not appear at the trial." *Id.* If the

---

1, 2011) (if witness unable to give security, conditional examination shall occur within three days of order and witness discharged upon completion); Idaho Code Ann. § 19-824 (West, Westlaw through 2011, ch. 1–335) (material witness unable to procure sureties may be conditionally examined and discharged unless witness is an accomplice to underlying crime); Kan. Stat. Ann. § 22-2805(a) (material witness unable to comply with terms of release cannot be held if the testimony of the witness can be secured for use at trial by deposition); N.J. Stat. Ann. 2C:104-8 (material witness may apply for order directing deposition be taken; after deposition, terms of confinement order vacated and least restrictive conditions to secure appearance of witness imposed); N.M. Stat. Ann. § 31-3-7 (witness may be committed for five days, extended for good cause for an additional five days); N.C. Gen. Stat. Ann. § 15A-803(c) (West, Westlaw through 2010, ch. 18) (material witness may be held for a period no longer than twenty days, subject to renewal orders of five days each); R.I. Super. R. Crim. P. 46(i) (requiring district court supervision to eliminate all unnecessary detention and requiring attorney general to make biweekly report to Presiding Justice listing witness who has been in custody for excess of ten days and stating why release after deposition has not occurred); Wis. Stat. Ann. § 969.01(3) (witness may be held for a period not to exceed fifteen days in order to obtain deposition); Wyo. R. Crim. P. 46.3 (West, Westlaw through May 15, 2011) ("No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice.").

[10]Mass. Gen. Laws Ann. ch. 276, § 49 (West, Westlaw through 2011 1st Annual Sess., ch. 67); Minn. Stat. Ann. § 629.54 (West, Westlaw through 2011 Reg. Sess., ch. 19).

witness refuses to execute a recognizance, however, the witness may be committed to the custody of the sheriff until trial. *Id.*

In summary, no other state material witness statute uses comparable language to Iowa Code section 804.11, which establishes a probable cause requirement that a person "might be unavailable for service of a subpoena." *See* Iowa Code §§ 804.11, .23. Instead, most state statutes use broader language for potential material witness detention, but often impose substantial limitations on the more generous authority by limiting the period of detention or allowing release after the witness has been deposed.

3. *State case law regarding detention of material witnesses.* State courts have addressed a number of issues related to the detention of material witnesses under local law. In construing material witness statutes, a number of courts have stressed the need to impose a narrow or strict construction of them because of the potentially dramatic effect on the liberty interests of innocent persons. *See, e.g.*, *In re Yasutaro*, 15 Haw. 667, 670 (1904); *People ex rel. Van Der Beek v. McCloskey*, 238 N.Y.S.2d 676, 680 (App. Div. 1963); *In re Prestigiacomo*, 255 N.Y.S. 289, 289 (App. Div. 1932); *State v. Lloyd*, 538 P.2d 1278, 1289 (Or. Ct. App. 1975).

A few state courts have addressed the issue of the relationship between the subpoena power and witness detention. In *State v. Hand*, 242 A.2d 888 (N.J. Super. Ct. Law Div. 1968), the court considered the authority of a police officer to arrest a material witness under New Jersey common law. Under the facts of the case, the court concluded that because there was no evidence that the defendant would be "unavailable for service of a subpoena if she was needed in the prosecution," she could not be arrested as a material witness. *Hand*, 242 A.2d at 895–97.

In contrast, in *In re Francisco M.*, 103 Cal. Rptr. 2d 794, 799, 808 (Ct. App. 2001), a California court concluded that there was adequate basis to hold the witness—even though there had been no disobedience to a subpoena—where the witness had fled officers, stated he would not go to court to testify, and explained he was afraid of being killed if he testified. *See also Ex parte Shaw*, 61 Cal. 58, 59 (1882) (ordering release of material witness where magistrate failed to require an undertaking for the witness's appearance at trial).

**F.  Iowa's Material Witness Statute and Case Law.**

1.  *Statutory background.*  Iowa's material witness statute can be traced back to 1851.  Originally, the material witness statute permitted a magistrate to detain a material witness if the witness refused to provide a written undertaking that "he will appear and testify at the court to which the defendant is bound to answer" or if the magistrate required security and the material witness failed to provide it.  Iowa Code §§ 2876–79 (1851).  The "appear and testify" language in the original Iowa material witness statute is similar to language used in many of the statutory provisions of other states.

The legislature amended the material witness statute in 1880.  The new provision stated that a witness could be required to enter into a written undertaking to the effect that he would "appear and testify" at court and would not "evade or attempt to evade the service of a subpoena."  1880 Iowa Acts ch. 130, § 1 (codified at Iowa Code § 4248 (1888)).  If a magistrate concluded that a written assurance was insufficient to ensure the witness's presence at trial, a surety could be required.  Iowa Code § 4249 (1888).  If the witness failed to provide a written assurance or surety if required, the magistrate was authorized to commit the witness until the witness complied or was legally discharged.

*Id.* § 4251. Like its 1851 predecessor, the 1880 amendment clearly contemplated that the mere service of a subpoena did not prevent the detention of a person as a material witness if there was a sufficient showing that the subpoena would be insufficient to ensure the testimony of the witness at trial.

The 1880 version was in place until 1978 when the current material witness statute codified in Iowa Code sections 804.11, 804.23, and 811.2 took effect. The revisions to the material witness statute were part of a general revision of the Iowa Criminal Code undertaken by the Iowa legislature.

The legislative history reveals that the version of the material witness statute that passed the Senate in 1976 contained a provision similar to that in the federal witness detention statute and the statutes of other states. Specifically, the Senate version of the bill provided:

> Sec. 1103. <u>NEW SECTION</u>. RELEASE OF MATERIAL WITNESSES. If it appears by affidavit that the testimony of a person is material in any criminal proceeding, and if it is shown that it may become impracticable to secure his presence by subpoena, a magistrate shall impose conditions of release pursuant to section one thousand one hundred two (1102) of this division.

S.F. 85, 66th G.A., 2d Sess. § 1103 (Iowa 1976). The House, however, rejected this provision. *See* 1976 H.J. 1385. The final bill contained the current "might be unavailable for service of a subpoena" language. 1976 Iowa Acts ch. 1245, (ch. 2), §§ 408–09 (codified at Iowa Code §§ 804.11, .23 (1979)).

2. *Iowa case law.* We have had several occasions to consider issues related to the detention of material witnesses. In *Comfort*, we held that a provision of the Code which authorized judges in cases involving a change of venue to impose recognizance on material witnesses did not

authorize the imposition of a bond or other security. *Comfort*, 81 Iowa at 185, 46 N.W. at 990. In coming to that conclusion, we noted that courts had no inherent authority to bind witnesses by recognizance to appear but only exercised such authority as conferred by statute. *Id.* at 184–85, 46 N.W. at 990. We declined to allow the term "recognizance" to include a bond requirement, noting that the power to require a bond of a witness is "unusual and extraordinary" and should not be exercised "where authority is doubtful." *Id.* at 183–84, 46 N.W. at 990. We further emphasized that we were not at liberty to engraft such provisions onto a statute for public policy reasons. *Id.* at 184, 46 N.W. at 990. Further, we noted that expanded statutory authority to impose bonding requirements on material witnesses "may not be inferred" from other statutes. *Id.* at 185, 46 N.W. at 990.

We recently considered questions related to Iowa's current material witness statute in *Hernandez-Lopez*. In this case, a material witness challenged his continued detention after he had given a deposition in the underlying criminal case. *Hernandez-Lopez*, 639 N.W.2d at 232–33. The sole issue preserved on appeal was a facial procedural and substantive due process challenge to Iowa Code sections 804.11 and 804.23. *Id.* at 234–35. No issues of statutory interpretation were preserved. *Id.*

We rejected the facial claim that the statutes violated substantive due process. Because we noted that Iowa Code section 804.23 gave magistrates discretion to order release of an arrested material witness, we concluded that a facial challenge to the statute on substantive due process grounds was without merit. *Id.* at 239. We did, however, construe Iowa Code section 804.11, which stated that a witness could be arrested when he or she "might" not be available for service of a subpoena, to require "probable cause." *Id.*

We also rejected the facial attack on procedural due process grounds. We again emphasized that under Iowa Code section 804.23, a detained witness has an opportunity to be heard on all relevant issues related to his detention. *Id.* at 241.

In *Hernandez-Lopez*, we did refer to section 804.11 as addressing the "likelihood of the unavailability of the defendant for trial." *Id.* at 239. There were no statutory issues before the court, however, and, as a result, this characterization was of no particular significance to the case. Subsequent to *Hernandez-Lopez*, we decided *State v. Enderle*, 745 N.W.2d 438 (Iowa 2007). In *Enderle*, the court accurately stated that Iowa Code section 804.11 required "probable cause to believe (1) a person is a necessary and material witness to a felony, and (2) such person might be unavailable for service of a subpoena." *Enderle*, 745 N.W.2d at 440.

## V. Discussion of Merits.

In this case, Marshall argues that Iowa's material witness statute authorizes only detention in order to ensure service of a subpoena and that once service of a subpoena is ensured, the material witness may no longer be held in custody. Marshall relies primarily on the language of Iowa Code section 804.11, which authorizes the arrest of a material witness in a felony prosecution where probable cause exists to believe that the witness would be "unavailable for service of a subpoena."

The State counters that sections 804.11 and 804.23 may be more broadly construed to support continued arrest and detention of a material witness—even when service of a subpoena is ensured—if the State shows that the subpoena may not be honored by the material witness. The State relies on language in *Hernandez-Lopez* to support its

position that securing attendance at trial is the underlying purpose of the statute, which would be defeated by Marshall's narrow interpretation.

We begin our consideration by noting that traditionally, in Iowa and elsewhere, the power of the state to arrest and detain material witnesses not charged with a crime has generally been narrowly construed. *See Comfort*, 81 Iowa at 184–85, 46 N.W. at 990. Courts are reluctant to authorize detention of a person not accused of a crime for long periods of time in conditions of confinement that may be worse than those experienced by persons convicted of serious felonies. *See id.* at 183–85, 46 N.W. at 990. We believe the tradition of narrow construction of material witness statutes is based upon sound reasoning that continues to have application in the modern context. *See* 3 Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 58:4, at 120 (7th ed. 2008) (statutes impinging on liberty interests subject to strict construction). We should give the language of the statute its fair meaning, but should not extend its reach beyond its express terms. *State v. Hearn*, 797 N.W.2d 577, 587 (Iowa 2011).

We next turn to the terms of the statute itself. We note that Iowa Code section 804.11, on its face, explicitly focuses on the inability to serve a subpoena as a necessary criterion for the arrest of a material witness. If a subpoena can be served, however, the underlying basis for the arrest is no longer present.

It logically follows that if the basis for the arrest of a material witness is eliminated, there can be no basis for a continued detention. When a person is arrested based on a valid warrant establishing probable cause to believe a crime has been committed, federal due process requires that the accused must be released within a reasonable time when the underlying basis for the warrant is shown to be incorrect.

*See, e.g.*, *Lee v. City of Los Angeles*, 250 F.3d 668, 683 (9th Cir. 2001), *abrogated on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002); *Panfil v. City of Chicago*, 45 Fed. App'x 528, 534 (7th Cir. 2002). Similarly, a witness may be validly held in contempt for failure to testify pursuant to a court order, but once the witness testifies, the witness is no longer in contempt. *Raphael v. State,* 994 P.2d 1004, 1009 (Alaska 2000).

Applying the reasoning of these lines of cases here, when a material witness is arrested because of the likelihood that there will be an inability to serve a subpoena upon the witness, the witness must be released when the underlying basis for the detention is removed. We cannot hold that a witness who has been served a subpoena can be held as a material witness under a statute in which the explicit language states that its purpose is to ensure that a subpoena is served.

In reaching this conclusion, we note that the language in the Iowa statute is markedly different than that of the federal model, the Model Code of Criminal Procedure, and the majority of state statutes that focus on the need not to serve a subpoena but rather to secure presence at trial to present testimony. We also note that in the years just prior to the passage of the statute, the issue of the relationship between witness detention and subpoenas was actively being litigated in the federal and state courts. *See Barry*, 279 U.S. at 616, 49 S. Ct. at 456, 73 L. Ed. at 873; *Hand*, 242 A.2d at 895–97. We presume that the legislature was aware of the statutory and case law developments. *Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 459 (Iowa 2008).

In addition, the Iowa legislative history offers further support of our interpretation of the statute. The version of the witness detention statute that passed the Senate in 1976 contained a provision similar to

that in the federal witness detention statute, but this provision was rejected for the present language of Iowa Code section 804.11. This legislative history supports our view that the legislature has made a deliberate policy choice to narrow the scope of the detention of material witnesses in Iowa and not adopt the federal model. *See Chelsea Theater Corp. v. City of Burlington*, 258 N.W.2d 372, 374 (Iowa 1977) (stating "[t]he striking of a provision before enactment of a statute is an indication the statute should not be construed to include it").

The State suggests that the incorporation of the provisions of Iowa Code section 811.2 by Iowa Code section 804.23 expands the power of the state to detain material witnesses. We do not agree. At the outset, we note that Iowa Code section 804.23 again repeats the substantive requirement for an arrest warrant, namely, the fact that a witness might be "unavailable for service of a subpoena." Iowa Code § 804.23. The general bail provisions of Iowa Code section 811.2, which apply to defendants who may be held for trial, do not override the specific limiting language in sections 804.11 and 804.23, which circumscribe the power to take a material witness into custody. If there were a conflict, the specific limitations of Iowa Code sections 804.11 and 804.23 would prevail over the general. Iowa Code § 4.7. In any event, we harmonize the statutes to avoid conflict. *State v. Snyder*, 634 N.W.2d 613, 615 (Iowa 2001); *City of Des Moines v. City Dev. Bd.*, 633 N.W.2d 305, 311 (Iowa 2001). We conclude that the incorporation of Iowa Code section 811.2 in Iowa Code section 804.23 was not designed to expand the scope of witness detention, but simply to provide a procedural framework for releasing material witnesses properly held under Iowa Code section 804.11. Indeed, it would be nonsensical to read the incorporation of Iowa Code section 811.2 in Iowa Code section 804.23, an incorporation

which is expressly designed to allow a detained witness to be "released," as an expansion of the power to detain a witness. We decline to extend the potential period of incarceration under the material witness statute by any implication as a consequence of the incorporation of a procedure expressly designed to provide for "release."

Our refusal to use the bail statute as a method of extending detention not only is supported by language and logic, but case law. A recent decision of a federal district court considered the relationship between the federal material witness statute and the federal bail statute. *See In re Material Witness Warrant,* 213 F. Supp. 2d 287, 295 (S.D.N.Y. 2002); *see also* 18 U.S.C. § 3144 (incorporating 18 U.S.C. § 3142). In this case, it was suggested that because the bail statute referred to release "pending trial" and listed release factors that were relevant only if a crime had been charged and trial was pending, the federal material witness statute, which incorporated the bail statute, did not apply to grand jury proceedings. *In re Material Witness Warrant,* 213 F. Supp. at 295. The federal district court rejected the argument, declaring that under a "common sense" reading of the statutes, not all of the provisions of the bail statute are applicable to material witnesses, but the bail provisions apply "only insofar as [the bail statute]" provides "alternatives to incarceration [such] as release on bail or on conditions." *Id.* at 295. The Second Circuit cited this language with approval. *United States v. Awadallah,* 349 F.3d 42, 61 (2d Cir. 2003). Just as the federal bail statute only provides a mechanism *for release* of material witnesses validly held under the federal material witness statute, our bail statute only provides a mechanism *for release* of material witnesses validly held under Iowa's material witness statute. *Cf. State v. Coppes,* 247 Iowa 1057, 1062–63, 78 N.W.2d 10, 13–14 (1956) (no expansion of criminal

liability affecting liberty interest by implication); *see also United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221–23, 73 S. Ct. 227, 229–30, 97 L. Ed. 260, 264–65 (1952).

The State zealously argues that, as a matter of sound policy, it should have the authority to detain a material witness until the underlying trial is held. Iowa Code section 804.11, however, makes no mention of using detention to secure attendance at trial. It references unavailability for service of a subpoena. While the State offers policy reasons for an expansive interpretation of the statute, we have repeatedly said that " 'we are bound by what the legislature said, not by what it should or might have said.' " *Ranniger v. Iowa Dep't of Revenue & Fin.*, 746 N.W.2d 267, 270 (Iowa 2008) (quoting *Iowa Dep't of Transp. v. Soward*, 650 N.W.2d 569, 571 (Iowa 2002)). We will not " 'read something into the law that is not apparent from the words chosen by the legislature.' " *State v. Iowa Dist. Ct.*, 730 N.W.2d 677, 679 (Iowa 2007) (quoting *State v. Guzman-Juarez*, 591 N.W.2d 1, 2 (Iowa 1999)). For a court to determine what a statute should say is to make a policy decision reserved for the legislature. *Wanfalt v. Burlington Bank & Trust*, 729 N.W.2d 828, 832 (Iowa Ct. App. 2007) (Sackett, C.J., specially concurring). We enforce the terms of a statute as written. *Brown v. Star Seeds, Inc.*, 614 N.W.2d 577, 579 (Iowa 2000).

A contrary result would be inconsistent with our recent decision in *Anderson v. State*, 801 N.W.2d 1 (Iowa 2011). In *Anderson*, we declared " 'Ours not to reason why, ours but to read, and apply. It is our duty to accept the law as the legislative body enacts it.' " *Anderson*, 801 N.W.2d at 6 (quoting *Holland v. State*, 253 Iowa 1006, 1011, 115 N.W.2d 161, 164 (1962)). Further, we noted

> "If we do not follow the clear language of a statute . . . but by a fallacious theory of construction attempt to impose our own ideas of what is best, even if in so doing we conceive that we are promoting the public welfare and achieving a desirable result, we are indulging in judicial legislation and are invading the province of the Legislative branch of the Government, or of the electorate in amending the basic law. The end does not in such cases justify the means. We must accept [the statute] as the legislature wrote it, and its meaning is definite and beyond fair debate."

*Id.* at 7 (quoting *Holland*, 253 Iowa at 1011, 115 N.W.2d at 164). We cannot adopt a different approach here.

As *Anderson* explained, we have stated that in the interpretation of statutes, we seek to avoid absurd results. *Id.* at 7. The restricted common law tradition, the repeated debate about the proper scope of witness detention, the calls for reform of witness detention practices by the ABA, ALI, and legal scholars, cumulatively provide a rationale for legislative caution in the area. In addition, commentary contemporaneous with the enactment of current Iowa Code section 804.11, including that of a reporter to the general assembly's criminal code revision, urged reliance upon the subpoena power rather than the detention of material witnesses. Carlson, 55 Iowa L. Rev. at 15–18 & n.61; *see also* Cessante Ratione Legis Cessat Ipsa Lex, 7 Cath. U. L. Rev. at 49–50; Comment, *Pretrial Detention of Witnesses*, 117 U. Pa. L. Rev. 700, 700–01 (1969); Comment, *Witnesses—Imprisonment of the Material Witness for Failure to Give Bond*, 40 Neb. L. Rev. 503, 514 (1961). Under these circumstances, as in *Anderson*, we cannot say that the legislative policy choice objectively manifested in the language of Iowa Code section 804.11 is so odd or irrational that this court should employ ingenious interpretative methods to avoid it.

We do not find our approach to the statute inconsistent with our case law. It is true that in *Hernandez-Lopez* we used the phrase

"unavailable for trial" several times in our opinion. *See Hernandez-Lopez*, 639 N.W.2d at 232, 239, 242. But the only issues in *Hernandez-Lopez* were facial challenges to the statutes on grounds of substantive and procedural due process. *Id.* at 233–34. The content of the statutory requirements themselves was not at issue. Further, while the term "unavailable for trial" was occasionally used, the *Hernandez-Lopez* court noted that the statute was "narrowly drawn" and encompassed "only those individuals who have material knowledge to the commission of a felony and will be unavailable for service of a subpoena." *Id.* at 240. Finally, in the subsequent case of *Enderle* the "unavailable for trial" phrasing did not appear and only the narrow express language of the statute was cited. *Enderle,* 745 N.W.2d at 440. As a result, the passing references in *Hernandez-Lopez* to "unavailable at trial" thus are not authority for an expansive interpretation of the statute.

Indeed, a contrary approach would overturn our existing case law. We held long ago that material witness detention statutes are to be narrowly construed because of the liberty interests affected. *Comfort*, 81 Iowa at 183–85, 46 N.W. at 990. A narrow reading of the material witness statute compels the result we have reached in this case. There is no basis for overturning our traditional rule.

Finally, our approach does not render the statute superfluous as suggested by the State. The statute may be used after a criminal proceeding has been commenced against a third party but the location of a material witness is not presently known. After an arrest warrant has been issued, law enforcement officers across the state will have the authority to arrest the witness. The witness may then be held in custody, with bond if appropriate, until the witness is served with a subpoena in the underlying criminal action.

The statute may also be used when a person has been charged but not arrested. Until the arrest of the individual, it will not ordinarily be possible to serve a subpoena on a material witness to appear at a trial that has not been set. Under these circumstances, the witness may be detained if a judge determines there are no other less restrictive alternatives or the witness fails to post required sureties until the arrest of the person charged with the crime and authorities are in a position to serve a subpoena upon the witness.

In addition, consistent with any applicable constitutional restraints, the statute appears to allow a witness to be detained prior to the initiation of any criminal proceedings when it is simply not possible to serve a subpoena because there is no pending criminal prosecution. This was the procedural posture in *Hernandez-Lopez*. While there may be constitutional limits regarding the nature and length of such detentions, we do not confront these issues today.[11]

In summary, we conclude that the limiting language of Iowa Code section 804.11 must be given full effect. We hold that a material witness may be detained only so long as is necessary to serve a subpoena upon the witness. Once a subpoena to appear and testify is served on the witness, the authority to detain the witness pursuant to Iowa Code section 804.11 ends.[12]

---

[11]In *Ex parte Grzyeskowiak*, 255 N.W. 359, 361 (Mich. 1934), a four-month detention of a material witness while the crime was investigated was held to be unreasonable and the witness ordered to be released. Moreover, if the person was held not as a witness but as a suspect, a Fourth Amendment issue would be presented. *See* footnote 1 and materials cited therein.

[12]At trial, Marshall contended that his detention violated the Federal Due Process Clause made applicable to the states under the Fourteenth Amendment and the due process clause contained in article I, section 9 of the Iowa Constitution. He also claimed that his detention violated his right to equal protection under the Fourteenth Amendment and article I, section 6 of the Iowa Constitution. Marshall further asserted his detention violated his right to be free from excessive bail under the Eighth Amendment and article I, section 17 of the Iowa Constitution. Because of our

## VI. Conclusion.

For the above reasons, we conclude that Iowa Code section 804.11 authorizes the arrest and detention of material witnesses to felonies only for the purpose of ensuring that a valid subpoena may be served upon the witness. As a result, the order of the district court requiring the release of Marshall in this case is affirmed.

**AFFIRMED.**

All justices concur except Cady, C.J., Waterman, and Mansfield, JJ., who dissent.

---

disposition of the statutory issue in this case, it is not necessary to address these constitutional claims. We express no view on them.

**CADY, Chief Justice (dissenting).**

I respectfully dissent.

I disagree with the majority's arrest and release interpretation of the material witness statutes. Under that interpretation, a material witness may be arrested if he or she would be unavailable for service of a subpoena, but then must be released once the trial subpoena has been served. According to the majority, release must occur even if the witness has given every indication that he or she will disregard the trial subpoena. This interpretation seems impractical; renders Iowa's statute different from other material witness statutes in the nation; and, most importantly, is inconsistent with the statutory language.

Iowa Code section 804.11 allows a material witness to be arrested when he or she "might be unavailable for service of a subpoena." Iowa Code § 804.11 (2009). Once arrest is made, however, the legislature further provided in section 804.23 that the witness would be brought to a magistrate who "may order the person released pursuant to section 811.2." Section 811.2 is a general provision governing the release of all bailable defendants. *Id.* § 811.2. It contains an overall requirement that the conditions of release "reasonably assure the appearance of the person for trial." *Id.* § 811.2(1).

Thus, as I read section 804.23, it incorporates a standard for release of the individual from section 811.2—namely, that the conditions for release will reasonably assure the appearance of the individual at trial. I believe this is what we said in *State v. Hernandez-Lopez*, 639 N.W.2d 226 (Iowa 2002), in which we discussed the linkage between section 804.23 and section 811.2. *See Hernandez-Lopez*, 639 N.W.2d at

237 (noting that, following the arrest of the material witness, "[t]he magistrate may then exercise his or her discretion to release the individual pursuant to section 811.2, or further confine the individual in accordance with the terms of an appearance bond"); *see also id.* at 238 (stating that, after the arrest of the material witness, "[s]ection 804.23 explicitly permits the magistrate to exercise his or her discretion and order the release of an arrested individual [and concluding] this discretionary authority also includes the power to consider and impose other less restrictive alternatives, such as the pretrial release methods proposed by the defendants" (citing Iowa Code § 811.2)).[13]

Accordingly, while the statute predicates arrest on a likelihood of the material witness being unavailable for service of a subpoena, the overall thrust of the statute, like other material witness statutes around the country, is to assure that material testimony in a criminal case is presented at the trial.

The majority argues that the arrest of a material witness and the continued detention of a material witness cannot be governed under different standards. They maintain, "It logically follows that if the basis for the arrest of a material witness is eliminated, there can be no basis for a continued detention." But why? The two fact-specific cases cited by the majority do not support their broader proposition.[14] In reality, it

---

[13]Iowa's material witness statute is similar to the federal material witness statute in that it permits a witness to be arrested, 18 U.S.C. § 3144 (2006), but then incorporates the normal bail statute, *id.* § 3142, to govern the release of the arrested person. In applying the bail statute, however, the federal courts apply a commonsense approach so that only those portions of the bail statute that fit the material witness scheme are applied. *In re Material Witness Warrant*, 213 F. Supp. 2d 287, 295 (S.D.N.Y. 2002).

[14]Both *Lee v. City of Los Angeles*, 250 F.3d 668, 683 (9th Cir. 2001), *abrogated on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002), and *Panfil v. City of Chicago*, 45 Fed. App'x 528, 534 (7th Cir. 2002),

happens all the time that a person is arrested for one criminal charge but is then detained because of a different criminal charge even though the original grounds for arrest turned out on further investigation to be unsupported. *See, e.g., State v. Bradford*, 620 N.W.2d 503, 508 (Iowa 2000) (holding police properly arrested defendant for harassment and noting propriety of subsequent detention based on different charge).[15] "Catch and release" is not required here.

The majority acknowledges that, when interpreting statutes, it is bound by what the legislature has written, not by what it might have written. *See Ranniger v. Iowa Dep't of Revenue & Fin.*, 746 N.W.2d 267, 270 (Iowa 2008). Further, it acknowledges that we may not write into the statute anything that is not apparent from the words chosen by the legislature. *See State v. Iowa Dist. Ct.*, 730 N.W.2d 677, 679 (Iowa 2007). Yet, it does both in this case by resorting to policy considerations on the controversial area of detaining witnesses and by assuming that detention may not continue once its initial purpose has been served.

I recognize that witness detention statutes raise serious constitutional concerns. *Hernandez-Lopez* addressed a number of those concerns and made it clear that constitutional due process is an important limitation on these statutes. *See Hernandez-Lopez*, 639 N.W.2d at 237–42. Courts should be diligent in assuring that material witness laws are not abused and that any detentions of material

---

involved individuals who remained in detention even though there were *no* grounds to hold them.

[15]The historical and well-established rule is that even an illegal arrest does not deprive a court of jurisdiction to proceed against the defendant in a criminal case. *See* 1 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 1.9(b), at 341 (4th ed. 2004). If even an illegal arrest does not invalidate continued detention, it is difficult to see why the loss of the original grounds for a proper arrest would matter, so long as otherwise sufficient grounds for detaining the person remain.

witnesses fully comply with due process. But the present case is about statutory interpretation, not constitutional limits. I would decline to hold that Iowa's legislature enacted a statute that permits the state to hold a witness only until he or she is served with a trial subpoena and then requires an unconditional release of the witness. Rather, I would read sections 804.11, 804.23, and 811.2 in tandem, as we did in *Hernandez-Lopez* and as I believe the statutes are written.

Even if section 811.2 (despite the explicit reference to it in section 804.23) is not read to provide the relevant standards for holding and releasing material witnesses, our legislature is not required to address or resolve all issues in enacting statutes. *Knepper v. Monticello State Bank*, 450 N.W.2d 833, 837 (Iowa 1990) ("Reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind."). Instead, the general assembly may address specific subjects and issues in enacting statutes and leave other related issues for resolution by other means, including application of constitutional law. *Id.* The legislature can express its intent by what it says just as well as it can by what it does not say. *Eaton v. Iowa Emp't Appeal Bd.*, 602 N.W.2d 553, 556 (Iowa 1999). If the legislature failed to address release beyond the initial appearance in the statute, then we should find that it left the matter to be resolved on a case-by-case basis through the application of the due process clause. It contemplated, therefore, that the witness would be released as required by the due process clause.

I acknowledge that even my construction of the statute does not whisk all the lumps from the batter. Both the majority and I agree that a material witness cannot be arrested in the first place unless he or she would be unavailable for service of a subpoena. *See* Iowa Code § 804.11.

This seems a bit incongruous. Does it mean that, if the trial date is already set and the witness's present whereabouts are known, the person cannot be arrested as a material witness regardless of future intention to flee the jurisdiction? The answer appears to be yes. But, in Marshall's case, and in many other instances, the arrest of the material witness will occur *before* any trial date is known (or even before charges are filed). In such a case, so long as section 804.23 is read to incorporate section 811.2, the statute can properly serve its intended purpose of actually assuring the material witness's presence at trial. To put it another way, the existence of one gap in the statute as enacted is no reason for us to create bigger gaps that the legislature did not enact.

For these reasons, I would reverse the district court.

Waterman and Mansfield, JJ., join this dissent.